IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:04CR199 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| vs. | ) | AND ORDER |
| | ) | |
| BILLY D. DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Report and Recommendation (Filing No. 44) issued by Magistrate Judge F.A. Gossett recommending denial of the Motion to Suppress filed by the Defendant, Billy D. Davis (Filing No. 32). Davis filed a Statement of Objections to the Report and Recommendation (Filing No. 45) and a supporting brief (Filing No. 46) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a).

Davis is charged in a one-count Indictment with conspiracy to distribute and possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base. Davis seeks an order suppressing all evidence and statements obtained as a result of his encounters with law enforcement on two separate occasions on January 12, 2000, and October 21, 2001.

Following an evidentiary hearing on the motions, Judge Gossett issued a Report and Recommendation in which he determined the following with respect to the January 12, 2000, encounter: officers had reasonable suspicion to perform a *Terry* stop, but they could not complete the stop due to Davis's flight; officers exceeded the scope of a *Terry* stop in placing Davis in the patrol car and taking him to the station for an interview and in strip-searching him; the strip search cannot be justified incident to an arrest as no reason for an arrest was provided; the crack cocaine found during the strip search should be suppressed;

Davis's statements made in the patrol car were volunteered and should not be suppressed; at the station, Davis was administered, and waived, his *Miranda* rights, and any subsequent statements should not be suppressed.

With respect to the October 12, 2001, encounter, Judge Gossett determined: the vehicle in which Davis was riding was lawfully stopped for a traffic violation; Davis's movements upon seeing the cruiser's lights provided reasonable suspicion for a *Terry* stop; during the pat-down search, Officer Rieck detected a hard rock-like substance between Davis's buttocks, which gave officers probable cause to believe Davis was in possession of an illegal substance; and neither a strip search nor a body cavity search was performed.

On the basis of these determinations, Judge Gossett recommended that Davis's motion to suppress be granted in part and denied in part as follows: the motion should be granted as to the crack cocaine found on January 12, 2000; and otherwise the motion should be denied.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a), the Court shall make a de novo determination of those portions of the report, findings, and recommendations to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## STATEMENT OF FACTS

The Magistrate Judge provided a detailed account of the events leading up to the two separate encounters. The Court has considered the transcript of the hearing conducted by the Magistrate Judge (Filing No. 37). The Court also carefully viewed the

evidence. (Filing No. 36.) No objections were made to the statement of facts. The Court adopts Judge Gossett's thorough statement of the facts in its entirety.

## ANALYSIS

### January 12, 2000

With respect to the initial encounter, Davis argues that the advice of his *Miranda* rights and his waiver of his rights followed an illegal detention and arrest, and therefore despite the *Miranda* waiver his statements should be suppressed as fruit of an illegal detention and arrest.

The Eighth Circuit has stated:

> Statements that result from an illegal detention are not admissible. *United States v. Ramos,* 42 F.3d 1160, 1164 (8th Cir.1994). The causal chain between an illegal arrest and a statement given later is broken, however, "if the statement is 'sufficiently an act of free will to purge the primary taint.' " *Id.* (quoting *Wong Sun v. United States,* 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). "The giving of *Miranda* warnings, followed by the making of a voluntary statement, does not, in and of itself, mandate a statement's admissibility." *Id.* Instead, to decide whether a confession is the product of a free will, courts consider *Miranda* warnings, the temporal proximity of the arrest and the confession, the presence of intervening circumstances, and particularly, the purpose and flagrancy of the official misconduct. *Id.*

*United States v. Hernandez-Hernandez,* 384 F.3d 562, 565 (8th Cir. 2004).

In analyzing the *Ramos* factors in deciding *Herndandez-Hernandez,* the Eighth Circuit contrasted the situations in *Oregon v. Elstad,* 470 U.S. 298 (1985), with *Missouri v. Seibert,* 124 S. Ct. 2601 (2004):

> [The *Elstad* Court] held a suspect who has answered inadvertently unwarned, uncoercive questions may validly waive his rights and provide an admissible statement after being warned. In *Elstad,* the defendant had made an initial statement in his home, was taken to the police station, given *Miranda* warnings, then admitted his involvement in a crime. *Id.* at 301. In contrasting between *Elstad* and the situation in *Seibert,* the Court in *Seibert* listed several facts, similar to those we listed in *Ramos,* that bear on whether

> *Miranda* warnings delivered midquestioning can be effective: the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first. *Seibert,* 124 S.Ct. at 2612. Because a reasonable person in Elstad's shoes could have seen the station house questioning as a new and distinct experience from the earlier, unwarned questioning in his home, the station house *Miranda* warnings could have been viewed as presenting a genuine choice whether to follow up on the earlier admission. *Id.*

*United States v. Hernandez-Hernandez,* 384 F.3d 562, 566 (8th Cir. 2004).

Davis's situation appears somewhere in between *Elstad* and *Seibert,* yet closer to the type of situation presented in *Seibert.* Davis was seen leaning into a car in a parking lot of a closed store in a high-crime area, and he fled when he saw police. Based on this set of facts, he was detained, handcuffed, and taken to the police station. While he was being transported he volunteered that he was fleeing because he had warrants. As Davis was in a police interview room removing his clothing for a strip search, and before he removed his long-john underwear, a baggie with suspected crack cocaine fell out of his clothing onto the floor. Davis was then read his *Miranda* rights, and he made a statement. Davis's situation is closer to *Seibert* because all events occurred in succession, police contact was continuous, the questioning was clearly connected both in time and subject matter to the earlier detention, and the police conduct in telling Davis that he would be strip searched based on the scant set of facts known at the time was egregious. Davis's waiver of his *Miranda* rights and his statement were not sufficiently an act of free will that purged the primary taint of the illegal arrest.

For these reasons, the *Ramos* factors are in Davis's favor, and Davis's statements made at the police station as a result of the January 12, 2000, encounter are suppressed.

4

*October 21, 2001*

With respect to the second encounter, Davis objects to the conclusion that the suspected crack cocaine should not be suppressed, arguing that the *Terry* stop that yielded a hard rock-like object was never identified by officers as a weapon or contraband ripened into an arrest without probable cause and that the decision of the District Court of Douglas County suppressing the evidence is binding on this Court.

The objection is denied. There was testimony at the hearing that, in an officer's experience, drugs are sometimes transported between one's buttocks, and clearly Officer Rieck's testimony indicated that he thought the hard, marble-like object fond during the pat-down was crack cocaine. (Tr. 75-76.) Officers had probable cause based on the evidence. *United States v. Bustos-Torres,* 396 F.3d 935, 945 (8th Cir.) (stating that probable cause requires the incriminating nature of the evidence to be "immediately identifiable"), *cert. denied,* 125 S. Ct. 2557 (2005). Moreover, a state court ruling that evidence is inadmissible because it was seized in violation of the Fourth Amendment to the United States Constitution is not binding on this Court. *United States v. McConnell,* 903 F.2d 566, 570 (8th Cir. 1990).

IT IS ORDERED:

1. The Magistrate Judge's Report and Recommendation (Filing No. 44) is adopted in part and amended in part as follows:

    a. the Magistrate Judge's Report and Recommendation is amended insofar as Davis's statements made to law enforcement at the police station as a result of his January 12. 2000, encounter are suppressed;

   b.  otherwise, the Magistrate Judge's Report and Recommendation is adopted;

 2. The Statement of Objections to the Report and Recommendation (Filing No. 45) is granted in part and denied in part as follows:

   a.  the Objections are granted insofar as Davis's statements made to law enforcement at the police station as a result of his January 12. 2000, encounter are suppressed;

   b.  otherwise, the Objections are denied;

 3. The Defendant's Motion to Suppress (Filing No. 32) is granted in part and denied in part as follows:

   a.  the motion is granted as to the crack cocaine seized on January 12, 2000, and the Davis's statements made to law enforcement while in the interview room at the police station on or about the same date; and

   b.  otherwise, the motion is denied.

DATED this 5th day of July, 2005.

            BY THE COURT:

            s/Laurie Smith Camp
            United States District Judge